UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS HENNIGHAN,<br><br>    Plaintiff,<br><br>        v.<br><br>INSPHERE INSURANCE SOLUTIONS, INC, et al.,<br><br>    Defendants. | Case No.  13-cv-00638-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART INSPHERE'S MOTION TO DISMISS**<br><br>Re: ECF No. 10 |

In this action, Plaintiff Thomas Hennighan sues Defendant Insphere Insurance Solutions, Inc. ("Insphere") and other defendants[1] for wrongful termination in violation of public policy, and for violations of the California Labor Code. ECF No. 1. Now before the Court is Defendants' Motion to Dismiss the Complaint. ECF No. 10. For the reasons stated below, the Court GRANTS the motion as to Plaintiff's fifth and ninth causes of action and DENIES it as to the remaining claims.

**I.   FACTS**

The Court takes the following facts as established for purposes of this motion. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

Mr. Hennighan sold insurance as a Sales Agent for Insphere from May 2005 to April 27, 2012.[2] At least during his last two years with Insphere, Mr. Hennighan was one of the top Sales Agents at the company, and he earned many awards and accolades in recognition of his

---

[1] The other defendants are alleged to be owners or investors in Insphere. Because none of their alleged actions are relevant to this motion, the Court focuses its discussion solely on Insphere.
[2] The Complaint is unclear as to whether Mr. Hennighan was a Sales Agent during this entire time, or whether he held a different title for part of it. See Dkt. No. 10, ¶ 10, 15, 16, 21. The ambiguity does not affect the Court's ruling on the present motion.

accomplishments.

During most of his time at Insphere, Mr. Hennighan believed that Insphere was not paying its sales staff properly.[3] Among other things, Mr. Hennighan believed that Insphere was not paying overtime when required; was not providing meal and rest breaks; was not providing vacation hours; was not reimbursing expenses necessarily incurred by employees in the performance of their duties; was not paying its employees twice a month, as required; and was not providing itemized wage statements.

On November 11, 2011, Mr. Hennighan filed a complaint with the California Labor Commissioner reporting these alleged labor code violations. After he filed his complaint, his direct supervisor told him he was "causing problems," that filing it was "not a smart move," that he would "have no friends," and not to "throw this job away." Mr. Hennighan had witnessed Insphere retaliate against other Insphere salespeople and managers, and he feared that Insphere would retaliate against him as well.

Mr. Hennighan attended a hearing to address his complaint before the Labor Commissioner on January 30, 2012.

On or about April 27, 2012, Insphere notified Mr. Hennighan that his "Independent Contractor Agreement" was being canceled, thereby terminating his employment. He filed a retaliation complaint with the Labor Commissioner on October 25, 2012, and with the California Labor & Workforce Development Agency on November 8, 2012.

Plaintiff then filed this action, alleging violation of California Labor Code sections 98.6 and 1102.5 (retaliation); wrongful termination in violation of public policy; violation of Labor Code section 201 (failure to deliver final paycheck); violation of Labor Code sections 227 and 227.3 (failure to deliver vacation pay); violation of Labor Code section 204 (misclassification and failure to pay wages periodically); violation of Labor Code section 226 (failure to provide itemized wage statement); violation of Labor Code sections 226.7 and 512 (failure to provide meal

---

[3] In addition to Sales Agents, the sales staff at Insphere consists of Sales Leaders (who supervise Sales Agents, and also make direct sales) and Division Managers (who train and supervise Sales Agents and Sales Leaders).

1  breaks or rest periods); violation of Labor Code sections 510 and 1194 (failure to pay overtime);

2  violation of Labor Code section 2802 (failure to indemnify for necessary expenditures); violation

3  of Business & Professions Code section 17200 (unlawful, unfair, and fraudulent business

4  practices); entitlement to penalties and fees pursuant to Labor Code sections 2698 and 2699

5  (Labor Code Private Attorneys General Act); and entitlement to punitive damages.

6  Insphere then filed this motion to dismiss. ECF No. 10.

## II. LEGAL STANDARDS

On a motion to dismiss, the Court accepts the material facts alleged in the complaint, together with reasonable inferences to be drawn from those facts, as true. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To be entitled to the presumption of truth, a complaint's allegations "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), *cert. den'd*, --- U.S. ----, 132 S.Ct. 2101 (2012).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S., at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "If there are two alternative explanations, one advanced by [D]efendant and the other advanced by [P]laintiff, both of which are plausible, [P]laintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when [D]efendant's plausible alternative explanation is so convincing that [P]laintiff's explanation is implausible." *Starr*, 652 F.3d at 1216. Dismissal is appropriate given the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

3

cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533–34 (9th Cir.1984).

If the court dismisses a claim for failure to meet these standards, it should grant leave to amend unless it is clear that no amendment could possibly cure the complaint. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998).

## III.   ANALYSIS

Hennighan alleges that Insphere violated the California Labor Code by retaliating against him for reporting violations to the Labor Commissioner, failing to pay him his final paycheck, and treating him as an independent contractor rather than an employee, thereby failing to comply with several provisions of the Labor Code.  Hennighan also brings a common law claim for wrongful termination in violation of public policy as well as violations of the Private Attorney General Act ("PAGA") and California's Unfair Competition Law ("UCL"). Those claims derive from the Labor Code violations.

Insphere moves to dismiss Mr. Hennighan's complaint on the grounds that he has failed to state a prima facie claim for (1) retaliation, (2) failure to pay wages, (3) each of the Labor Code misclassification violations, and (4) the common law wrongful termination claim.  Because Insphere argues that each Labor Code claim must be dismissed, it also argues that Mr. Hennighan's derivative statutory claims must also be dismissed.  Finally, Insphere moves to dismiss Plaintiff's claim for punitive damages.

The Court now examines each of these in turn.

### A.   Violations of California Labor Code

#### i.   Retaliation (Sections 98.6 and 1102.5)

To plead a prima facie case of retaliation under California Labor Code sections 98.6 and 1102.5, Mr. Hennighan must allege that (1) he engaged in a protected activity, that (2) Insphere subjected him to an adverse action, and that (3) there is a "causal link" between the two. *See Patten v. Grant Joint Union High Sch. Dist.*, 134 Cal. App. 4th 1378, 1384 (Cal. Ct. App. 2005). Insphere does not dispute that Hennighan has satisfied the first two requirements, but argues that his allegations regarding the causal link between the two "could hardly be more conclusory."  ECF

4

1   No. 10 at 5.

2   Plaintiffs may prove retaliation via direct evidence, circumstantial evidence, or both. Crucially, "[t]he causal link may be established by an inference derived from circumstantial evidence, 'such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision.'" *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 615 (Cal. Ct. App. 1989) (*citing Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir.1988)).

Mr. Hennighan alleges that he complained to the Labor Commissioner in November 2011 for what he, in good faith, believed were violations of the California Labor Code, and that Insphere terminated his employment a few months later, in April 2012. Plaintiff also alleges that his direct supervisor knew and disapproved of his decision to file that complaint. From those allegations, it is plausible to conclude that Insphere terminated Plaintiff in retaliation for filing his complaint. Plaintiff's allegations are therefore sufficient to sustain a claim of violation of section 1102.5.[4]

### ii. Failure to Pay Wages (Section 201)

Defendant moves to dismiss Plaintiff's section 201 claim for failure to pay wages because, according to Defendant, Plaintiff must specify the amount of unpaid wages at issue in the complaint, and Plaintiff has failed to do so.

The Court is not persuaded by that argument. Plaintiff alleges that Insphere failed to pay him his final paycheck, which are sufficient facts "from which the amount of the claimed penalty can be computed." *Oppenheimer v. Moebius*, 151 Cal. App. 2d 818, 820 (Cal. Ct. App. 1957). That allegation is sufficient for Insphere to compute the wages Plaintiff seeks, which is all that is required. *Id.*

---

[4] Insphere also argues that Plaintiff has failed to exhaust his administrative remedies with respect to his retaliation claim. Because Insphere raised this argument for the first time in its reply brief, the Court declines to consider it. "It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers." *U.S. ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000).

### iii.   Misclassification Violations (Sections 227, 227.3, 204, 226.7, 510, 512, 1194)

Defendants next assert that several of Plaintiff's Labor Code claims merely recite the statutory elements of each claim and are inadequate to put Defendants on notice of the claims against them. These arguments apply to Mr. Hennighan's claims that Insphere failed to: pay him vacation pay (sections 227 and 227.3); pay him his wages twice a month (section 204); furnish an itemized statement, in writing, of his wages (section 226); permit him to take meal and rest breaks (section 226.7); pay him overtime pay (sections 510 and 1194); and indemnify him for necessary expenditures incurred by him in discharging his duties (section 2802).

The crux of each of Plaintiff's misclassification claims is that the nature of Plaintiff's employment rendered him an employee, rather than an independent contractor, for purposes of the California Labor Code. If Hennighan was an employee, then Insphere's failure to afford him the rights and protections listed above could expose it to liability; if he was an independent contractor, Plaintiff will not be able to prevail on his misclassification claims.

California law presumes an employer/employee relationship once evidence has been presented that an individual provided services for an employer. The burden then shifts to the employer to prove, if it can, that the presumed employee was an independent contractor. *See Narayan v. EGL, Inc.*, 616 F3d 895, 900 (9th Cir. 2010). That legal question turns on the "economic reality" of Plaintiff's employment and is a context-specific and fact-intensive question. *See Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 755 (9th Cir. 1979) ("Economic realities, not contractual labels, determine employment status . . .").

Several factors enter into the question, including the employer's right to control the manner and means of performance, whether the employment relationship may be terminated at will, whether the worker engages in an occupation or business distinct from the employer's, the degree of supervision the employer exercises over the employee, the skill required to perform the work, who provides the instrumentalities and place of work, the length of time for which services are performed, whether the employee may hire and fire others, and how payment for services is calculated. *See S.G. Borello & Sons, Inc. v. Dept. of Indus. Relations*, 48 Cal. 3d 341, 548; Division of Labor Standards Enforcement 2002 Enforcement Policies & Interpretations Manual §

6

28.3.2.1 (setting forth factors for determining employment status).

    Against this legal backdrop, the Court finds that Mr. Hennighan's factual allegations are sufficient to survive a motion to dismiss. Plaintiff alleges that he was employed by Insphere, that he was paid by commission (8.5% from 2005 to 2010, and then 6%), that those commissions were paid as loans representing advances on unconsummated sales, that Insphere told him he was an independent contractor, that for at least two years he held the title of "Sales Agent," and that Insphere: (1) transfers, promotes, and fires Sales Agents; (2) determines all sales territories; (3) prohibits employees from business associations with other insurance companies unless they have a pre-existing contractual relationship with one; (4) restricts which products its employees can sell; (5) requires employees to attend weekly meetings, make regular call-ins, file regular reports, meet performance goals, attend out-of-town training, and attend out-of-town reunions; (6) refuses to mail commission checks so that its salespeople will come to the office in person; (7) controls the approval of content and timing of advertising; (8) controls which products are offered; (9) determines commissions and commission rates; (10) requires commissions to be turned over to Insphere, which then has the right to redistribute commissions "as it sees fit"; (11) owns and controls all sales prospects and clients and requires salespeople to purchase leads from Insphere; (12) determines whether to accept insurance applications brought in by salespeople; (13) calculates employee wages and commissions using a formula based on the anticipated profits of a newly accepted insurance application; (14) offers stock options and 401(K) plans to employees, which benefits are forfeit if employees "associate" with other insurance companies; (15) tells employees they may be terminated without cause at any time; (16) provides performance and conduct "guidelines," and requires employees to follow them; (17) requires performance reviews to be conducted on supervising salespeople; (18) requires employees to sign a non-compete agreement; and (19) requires employees to indemnify Insphere for all torts, fraud, and statutory violations.

    In addition, Mr. Hennighan alleges: that Insphere maintains and uses employment contracts that provide for vacation pay, but did not pay him vacation pay; that Insphere did not pay him twice a month; that Insphere never provided him with itemized wages statements; that

7

Insphere never provided him meal and rest breaks; and that Insphere never paid him overtime pay.

With respect to most of Plaintiff's claims, his allegations are highly factual and specific, exceeding Plaintiff's pleading burden. Plaintiffs are not required to allege the non-existence of something, such as vacation pay and overtime pay, with any greater specificity than Mr. Hennighan has done here. "[T]here is no more factual content Plaintiff *could* have alleged." *Yuckming Chiu v. Citrix Sys.*, Inc., No. 11-cv-1121-DOC, 2011 WL 6018278, at *3 (C.D. Cal. Nov. 23, 2011) (original emphasis).[5] Except as set forth below, the motion to dismiss his Labor Code claims will therefore be denied.

However, Insphere is correct that Plaintiff has failed to state a claim based on a violation of the indemnification requirement in the Labor Code. Apart from the bare allegation that Insphere violated California Labor Code section 2802, which pertains to an employer's indemnification of an employee for necessary job-related expenditures, Plaintiff does not identify any expenditures he made that would support a claim under section 2802, and the Court therefore DISMISSES that claim with leave to amend.

Insphere also argues that Plaintiff's fifth cause of action, based on Labor Code section 204, which requires employers to pay employees twice a month, does not create a private right of action. Mr. Hennighan concedes the point, but argues correctly that PAGA, Cal. Lab. Code § 2698, *et seq.*, created a private right of action for employees to seek civil penalties for violations of the Labor Code, including section 210, which authorizes civil penalties for violations of section 204, (as alleged in Plaintiff's eleventh cause of action). The Court therefore DISMISSES Mr. Hennighan's fifth cause of action, but recognizes that he may still seek the civil penalties for violations of Labor Code section 204 provided for in Labor Code section 210.

Finally, Insphere argues that Plaintiff's section 226 itemized wage statement claim must fail because Hennighan does not allege a "knowing and intentional failure" to provide such statements, and because Plaintiff fails to allege any injury as a result of the wage statement

---

[5] Insphere's cases do not hold otherwise. Those courts considered complaints that recited the statutory elements of the claims and alleged nothing more. *See, e.g.*, *Weigele v. FedEx Ground Package Sys., Inc.*, No. 06-cv-1330, 2010 WL 4723673 *3 (S.D. Cal. Nov. 15, 2010).

violation. Section 226 forecloses both arguments.

First, Plaintiff alleges that Insphere classified him as an independent contractor purposefully. The statute itself provides only that "a 'knowing and intentional failure' does not include an isolated and unintentional payroll error due to a clerical or inadvertent mistake," making clear that an allegation of purposeful misclassification is required. Cal. Lab. Code § 226(e)(3). That allegation is all the statute requires, and Plaintiff has so alleged.

Second, the statute provides that "[a]n employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide a wage statement." Cal. Lab. Code § 226(e)(2)(A). Plaintiff alleges that he did not receive any wage statements. That allegation is sufficient.

In summary, the Court DENIES Defendant's motion to dismiss Plaintiff's misclassification claims except for his Labor Code section 2802 claim, which is DISMISSED with leave to amend, and his section 204 claim, which is DISMISSED with prejudice.

### B. Wrongful Termination in Violation of Public Policy

Insphere moves to dismiss Plaintiff's common law claim and argues that he has failed adequately to plead a claim for wrongful termination in violation of public policy, the elements of which are essentially identical to those of Plaintiff's section 1102.5 retaliation claim. For the reasons discussed above, Insphere's motion to dismiss the common law claim is DENIED. Plaintiff has pled sufficient facts to make out a claim for wrongful termination in violation of public policy.

### C. Violation of California's Unfair Competition Law and the Private Attorney General Act (Section 2698)

The parties agree that Plaintiff's statutory claims under California's UCL, Bus. & Prof. Code § 17200, and PAGA, Cal. Lab. Code § 2698, are entirely derivative of his Labor Code claims. Because the Court denies Insphere's motion to dismiss the bulk of those claims, the Court also DENIES Insphere's motion to dismiss the UCL and PAGA claims.

### D. Punitive Damages

Insphere and Mr. Hennighan agree the only claims in his complaint for which punitive

9

damages are available are the retaliation claims (Labor Code section 1102.5 and common law wrongful termination in violation of public policy). Insphere moves to dismiss the punitive damages prayer on those claims based on the pleading standards set out by *Twombly* and *Iqbal*.

District courts in this circuit have disagreed over whether the pleading standards may be used to dismiss a prayer for punitive damages. *Compare Kelley v. Corrections Corp. of America*, 750 F. Supp. 2d 1132, 1136 (E.D. Cal. 2010) ("dismissing" punitive damages from complaint), *with Putini v. Blair Corp.*, 09-cv-2729-W, 2010 WL 1797019, at *2–3 (S.D. Cal. May 3, 2010) (declining to extend *Iqbal* to punitive damages claims).

This Court is not persuaded that *Twombly* and *Iqbal* apply to claims for punitive damages. Even if they did, however, the Court finds that Plaintiff has satisfied his burden of specifically alleging the facts that would support an award of punitive damages. The Court therefore DENIES Insphere's motion to dismiss Plaintiff's prayer for punitive damages.

## IV. CONCLUSION

For the reasons discussed above, the Court orders as follows:

1. Plaintiff's fifth cause of action based on violations of California Labor Code section 205 is hereby DISMISSED with prejudice.
2. Plaintiff's ninth cause of action based on violations of California Labor Code section 2802 is hereby DISMISSED with leave to amend.
3. In all other respects, Defendant Insphere's Motion to Dismiss Plaintiff's Complaint is DENIED.
4. Plaintiff shall have thirty days to file his First Amended Complaint.

**IT IS SO ORDERED**.

Dated: April 24, 2013

_____
JON S. TIGAR
United States District Judge