UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS HENNIGHAN,<br><br>    Plaintiff,<br><br>    v.<br><br>INSPHERE INSURANCE SOLUTIONS, INC, et al.,<br><br>    Defendants. | Case No.   13-cv-00638-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>Re:  Dkt. No. 37 |

## INTRODUCTION

Plaintiff Thomas Hennighan brings suit against defendants Insphere Insurance Solutions, Inc. ("Insphere"), and HealthMarkets, Inc. ("HealthMarkets") for violations of the California Labor Code and California's Unfair Competition Law.[1] HealthMarkets moves to dismiss with prejudice Hennighan's First Amended Complaint ("FAC") for failure to state a claim against it. Based on the parties' briefs and argument of counsel, and for the following reasons, HealthMarkets's Motion to Dismiss is GRANTED WITH LEAVE TO AMEND.

## FACTUAL BACKGROUND

For purposes of this Motion to Dismiss, the Court accepts as true the following factual

---

[1] After defining Insphere as "INSPHERE" in the first paragraph of the FAC, Hennighan then states, "For the sake of simplicity, all non-individual Defendants will be referred to as INSPHERE throughout this Complaint." FAC ¶¶ 1, 11.  This creates an obvious ambiguity that permeates the FAC.  The omnibus definition also does not comport with Federal Rule of Civil Procedure 8 because "it fails to put each defendant on notice of the claim or claims asserted against [it]." *McColm v. Anber*, No. 06-cv-7369-PJH, 2006 WL 3645308, at *3 (N.D. Cal. Dec. 12, 2006). Hennighan cannot simply "sweep all defendants" together when "not all claims can be asserted against all defendants." *Id.*  In any event, as discussed below, Hennighan's attempt to lump all the defendants together later conflicts with his assertions in his causes of action that "[t]his cause of action is asserted against INSPHERE only."  Hennighan is advised to clean up this definitional problem in his amended pleading.

allegations in Hennighan's FAC.

Insphere sells insurance policies and employs at least three categories of employees: sales agents, who sell selected insurance policies; sales leaders, who can earn commissions on their own sales, but also train, supervise, and motivate sales agents; and division managers, who only train, supervise, and motivate sales agents and leaders in their divisional office. FAC ¶¶ 12-13. While sales leaders and division managers are generally paid from "overwrite commission" based on their agents' sales, they "have no control over the business."[2] FAC ¶ 14.

When a sales agent sells a policy, the application is sent to selected carriers for approval. Insphere then requires the sales agent to take a cash advance on the prospective commission, which Insphere treats as a loan subject to interest that the sales agent must repay even if the policy is later rejected by the consumer or carrier. FAC ¶ 15. Until November 2009, sales leaders and division managers were responsible for a variable percentage of their sales agents' outstanding debt. "Productive" sales agents may be promoted as sales leaders, but their loans are paid off through deductions from their overwrite commission.

Hennighan "began his employment with Defendant INSPHERE in May 2005 as a Sales Agent." FAC ¶ 10. During his approximately two years in that position, he became one of the top sales agents at Insphere, earning many awards and accolades. FAC ¶ 22. Although Insphere paid Hennighan an 8.5 percent commission rate on sold policies when he began working, the rate was lowered to six percent in November 2010, and Hennighan was "required [] to reimburse" Insphere for the rate difference on past sales, plus interest. FAC ¶ 16. Also, Insphere would sometimes

---

[2] Insphere, on the other hand, transfers, promotes, and terminates sales agents, sales leaders, and division managers; determines all sales territories; prohibits employees from business associations with other insurance companies without a pre-existing contractual relationship; restricts employees from selling unauthorized products; requires its employees to attend certain events, meet certain performance goals, and file regular reports; "has a practice of not mailing commission checks to Sales Agents and Sales Leaders in order to force them to come into the division office regularly"; controls all advertising and the types of products offered; strongly expects employees not to own or operate another business; determines all commissions; "owns and controls all sales prospects and clients, and requires Sales Agents and Sales Leaders to purchase sales leads" from Insphere; determines whether to accept insurance applications; calculates compensation based on anticipated profits from accepted applications; provides stock options and 401(k), which employees may lose if they "associate" with other insurance companies; provides company rules; performs and mandates performance reviews; and requires employees to sign agreements not to compete with Insphere during or after their employment and to indemnify Insphere for all torts. FAC ¶ 14.

1  demand return of his commission checks. FAC ¶ 16. As part of his work, Hennighan would have
2  to spend his own money on travel, the cost of acquiring new leads, computer equipment, phone
3  costs, licenses, insurance, and business attire. FAC ¶ 17.
4    "During most of his employment" at Insphere, Hennighan did not believe Insphere was
5  paying its sales agents and leaders properly. FAC ¶ 18. On November 18, 2011, Hennighan filed
6  a complaint with the Labor Commissioner alleging violations of the Labor Code because Insphere
7  misclassified its employees as independent contractors and was not paying them or providing
8  proper itemized statements. FAC ¶¶ 18, 23. Hennighan's direct supervisor told him that he was
9  causing problems through his complaint and said that it was "not a smart move," that "he would
10 have no friends," and not to "throw this job away." FAC ¶ 19. The "hostile work environment"
11 created by his supervisor and the fear of similar retaliation from seeing how Insphere treated other
12 sales leaders and agency managers who filed complaints with the Labor Commissioner caused
13 Hennighan "extreme anxiety and stress," affecting his work performance and home life, and
14 resulting in lower sales and income. FAC ¶ 20. Around April 27, 2012, Hennighan was notified
15 that his "Independent Contractor Agreement" was being cancelled, thus ending his employment
16 with Insphere. FAC ¶ 21.

## PROCEDURAL BACKGROUND

Hennighan alleges that he has fulfilled his administrative exhaustion requirements. After he filed his initial complaint with the Labor Commissioner on November 18, 2011, he attended a hearing to address the complaint on January 30, 2012, and the Commissioner declined to take action. On October 25, 2012, Hennighan filed a retaliation complaint with the Labor Commissioner, and on November 8, 2012, he filed a complaint with the Labor and Workforce Department Agency. FAC ¶ 23.

On January 22, 2013, Hennighan filed suit in the Superior Court of California, Santa Clara County. On February 13, 2013, Insphere removed the case to this Court. On February 20, 2013, Insphere moved to dismiss the complaint for failure to state a claim against it. On April 24, 2013, the Honorable Jon Tigar granted in part and denied in part the motion to dismiss, dismissing with prejudice Hennighan's claim under California Labor Code Section 205 and dismissing with leave

1  to amend Hennighan's claim under California Labor Code Section 2802, and allowing other
2  claims to go forward against Insphere.  On May 27, 2013, Hennighan filed his FAC.  On June 11,
3  2013, the parties stipulated to dismiss without prejudice then-defendants The Blackstone Group
4  L.P., Goldman Sachs Capital Partners, and DLJ Merchant Banking Partners.  Only Insphere and
5  HealthMarkets remain as defendants.

6  The FAC asserts the following causes of action:  (1) unlawful discharge, discrimination,
7  and retaliation under California Labor Code Sections 98.6 and 1102.5; (2) wrongful termination in
8  violation of public policy codified in California Labor Code Sections 98.6, 1102.5, 204, 226,
9  226.7, 227, 510, 512, 1194, and 2802 and Business and Professions Code Section 17200; (3)
10 failure to immediately pay wages upon discharge under California Labor Code Section 201; (4)
11 failure to make agreed upon vacation payments under California Labor Code Sections 227 and
12 227.3; (5) failure to provide itemized wage statements under California Labor Code Section 226;
13 (6) failure to provide meal and break periods under California Labor Code Sections 226.7 and 512;
14 (7) failure to pay overtime wages under California Labor Code Sections 510 and 1194; (8) failure
15 to indemnify work-related expenditures under California Labor Code Section 2802; (9) unlawful,
16 unfair, and fraudulent business practices under Business and Professions Code Section 17200 as
17 evidenced by violation of public policy and California Labor Code Sections 98.6, 1102.5, 204,
18 226, 226.7, 227, 510, 512, 1194, and 2802; and (10) violations warranting penalties under the
19 Private Attorneys General Act of 2004, California Labor Code Sections 2698 and 2699.

20 On July 17, 2013, HealthMarkets moved to dismiss the FAC.  Dkt. No. 37.

## LEGAL STANDARD

22 A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the
23 pleadings fail to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  The
24 Court must "accept factual allegations in the complaint as true and construe the pleadings in the
25 light most favorable to the nonmoving party," *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519
26 F.3d 1025, 1031 (9th Cir. 2008), drawing all "reasonable inferences" from those facts in the
27 nonmoving party's favor, *Knievel v. ESPN*, 393 F.3d 1068, 1080 (9th Cir. 2005).  A complaint
28 may be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "a complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and brackets omitted). The court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). If a motion to dismiss is granted, a court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

## DISCUSSION

### I. HENNIGHAN FAILS TO ADEQUATELY PLEAD THAT HEALTHMARKETS IS LIABLE UNDER THE CALIFORNIA LABOR CODE

Hennighan fails to adequately plead that HealthMarkets is his employer and that he may bring causes of action against it under the California Labor Code. By its terms, all of the California Labor Code provisions under which Hennighan brings causes of action speak of, and require, an employee-employer relationship. Under California law, "[t]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." *S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 350 (1989). In addition, "California courts consider a number of additional factors, including: the right of the principal to discharge at will, without cause . . . whether the work is usually done under the direction of the principal . . . and whether the parties believe they are creating an employer-employee relationship." *Juarez v. Jani-King of Cal., Inc.*, 273 F.R.D. 571, 581 (N.D. Cal. 2011).

Here, Hennighan pleads no facts showing that he has an employment relationship with HealthMarkets. His sole substantive allegations about HealthMarkets are that it is the parent company of Insphere, that it is owned by a group of private equity investors, and that "each and every Defendant was an agent and/or employee of each and every other Defendant." FAC ¶¶ 3, 9,

11. There is no allegation that HealthMarkets was his employer or that he was its employee other than the omnibus definition in Paragraph Eleven.  Hennighan's FAC cannot even *possibly* state a claim against HealthMarkets because each of his ten causes of action says, "This cause of action is asserted against INSPHERE only."[3]  FAC ¶¶ 25, 34, 40, 46, 55, 61, 67, 73, 80, 85.  Federal Rule of Civil Procedure 8, which governs pleading, "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  556 U.S. at 678.  Here, Hennighan does not even provide such a bald accusation, let alone facts supporting it.  Thus, he fails to adequately state any claim against HealthMarkets under the California Labor Code.

## II. HENNIGHAN FAILS TO ADEQUATELY PLEAD THAT HEALTHMARKETS IS INSPHERE'S ALTER EGO

Hennighan fails to adequately plead that HealthMarkets is liable to him for Insphere's actions under the alter ego doctrine.  Under California Law, "The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests."  *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (1985).  The doctrine allows "the court [to] disregard the corporate entity and [to] hold the individual shareholders liable for the actions of the corporation" when it would be just to do so.  *Id.*  The doctrine has two elements:  "First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist.  Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone."  *Sonora Diamond Corp. v. Super. Ct. of Tuolumne Cnty.*, 83 Cal. App. 4th 523, 538 (2000).

In his opposition brief, but not his FAC, Hennighan argues that HealthMarkets is liable to him under the alter ego doctrine.  Opp'n 2.  Hennighan cites *Leek v. Cooper* for the proposition that "[t]o recover on an alter ego theory, a plaintiff need not use the words 'alter ego.'"  125 Cal. Rptr. 3d 56, 68 (2011).  He claims that he adequately pleads entitlement to the doctrine because

---

[3] Hennighan cannot credibly argue that "INSPHERE" here actually refers to all the named defendants, including HealthMarkets, as he does in FAC ¶ 11, since doing so would render all ten assertions that the causes of action are against "INSPHERE only" superfluous.

his FAC alleges that HealthMarkets and Insphere are agents of one another and thus are vicariously liable for each other. *Id.* However, the assertion that HealthMarkets and Insphere are each other's agents is nothing more than a "legal conclusion[] . . . cast in the form of [a] factual allegation[]," which carries no credence when considering a motion to dismiss. *W. Min. Council*, 643 F.2d at 624. Hennighan provides no fact to support that legal conclusion. His allegation that HealthMarkets is Insphere's parent company, and thus it should be liable, does not save him. Opp'n 2-3. He cites no authority to support that proposition. If parent companies were alter egos of their subsidiaries by definition, as Hennighan seems to suggest, the corporate form would be null. Additionally, Hennighan pleads no facts showing that HealthMarkets and Insphere have an inappropriate unity of interest or that holding only Insphere liable would lead to injustice. *Sonora Diamond Corp.*, 83 Cal. App. 4th at 538. "Conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003). Because Hennighan does not allege facts sufficient to warrant invocation of the alter ego doctrine, or even assert entitlement to the doctrine in his FAC, he fails to adequately state any claim against HealthMarkets.

## CONCLUSION

Hennighan's FAC is devoid of any factual allegation showing that HealthMarkets may be liable to him. Because Hennighan fails to adequately plead that HealthMarkets was his employer or is an alter ego for Insphere, but additional pleading may cure these defects, HealthMarkets's Motion to Dismiss the FAC as to HealthMarkets is GRANTED WITH LEAVE TO AMEND. Hennighan shall file any amended complaint within 20 days of the date of this Order.

**IT IS SO ORDERED.**

Dated: August 29, 2013

WILLIAM H. ORRICK
United States District Judge

7