UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS HENNIGHAN,<br><br>    Plaintiff,<br><br>    v.<br><br>INSPHERE INSURANCE SOLUTIONS, INC., et al.,<br><br>    Defendants. | Case No. 13-cv-00638-WHO<br><br>**ORDER GRANTING HEALTHMARKETS'S MOTION TO DISMISS WITH PREJUDICE**<br><br>Re: Dkt. No. 46 |

**INTRODUCTION**

Plaintiff Thomas Hennighan brings suit against defendants Insphere Insurance Solutions, Inc. ("Insphere"), and HealthMarkets, Inc. ("HealthMarkets"), for violations of the California Labor Code and California's Unfair Competition Law.[1] HealthMarkets moves to dismiss with prejudice Hennighan's Second Amended Complaint ("SAC") for failure to state a claim against it. For the following reasons, HealthMarkets's Motion to Dismiss is GRANTED WITH PREJUDICE.

**FACTUAL BACKGROUND**

For purposes of this Motion to Dismiss, the Court accepts as true the factual allegations in Hennighan's SAC.

Insphere was formed around November 2009. SAC ¶ 8. It previously conducted business

---

[1] The SAC states, "Because Defendant INSPHERE has conducted business under several different names throughout the years, for the sake of simplicity, Defendants HEALTHMARKETS and INSPHERE will be referred to as INSPHERE throughout most of the Complaint." SAC ¶ 11. As in the First Amended Complaint ("FAC"), this does not comport with Federal Rule of Civil Procedure 8 because "it fails to put each defendant on notice of the claim or claims asserted against [it]." *McColm v. Anber*, No. 06-cv-7369-PJH, 2006 WL 3645308, at *3 (N.D. Cal. Dec. 12, 2006). Hennighan has not heeded the Court's admonition that "Hennighan is advised to clean up this definitional problem in his amended pleading." Dkt. No. 41 at 1 n.1.

1  under the name United Group Association ("UGA"). SAC ¶ 8.

2  "[HealthMarkets] was founded in 1985 under the name UICI. In 2004, UICI purchased [HealthMarkets]."[2] SAC ¶ 8. A private equity group acquired UICI in 2006 and renamed it HealthMarkets. SAC ¶ 8. HealthMarkets conducts its insurance distribution business through its indirect subsidiary, Insphere. SAC ¶ 8. On information and belief, Insphere "is the alter ego" of HealthMarkets "or vice versa," HealthMarkets is the parent company of Insphere, and "[t]here is an obvious unity of interest and ownership between these two Defendants that the separate personalities of [Insphere] and [HealthMarkets] no longer exist." SAC ¶¶ 3 & 9. Both defendants were "acting with the consent, permission, and authorization" of each other, and they "ratified" and "approved" each other's actions. SAC ¶ 6. "Furthermore, Plaintiff believes and thereby represents that: (1) the officers and directors are the same for both entities; (2) the funds and assets of both entities have been comingled; (3) both entities have failed to follow required corporate formalities; (4) there is identical equitable ownership of the two entities; (5) both entities use the same office or business location; (6) both entities use the same employees/workforce; and (7) there has been a failure to maintain an arms-length relationship amongst these equities. (This list is not comprehensive and Plaintiff believes more facts demonstrating the alter ego of Defendants may exist.)" SAC ¶ 9.

Insphere sells insurance policies and employs at least three categories of employees: sales agents, who sell selected insurance policies; sales leaders, who can earn commissions on their own sales, but also train, supervise, and motivate sales agents; and division managers, who only train, supervise, and motivate sales agents and leaders in their divisional office. SAC ¶¶ 11-12. While sales leaders and division managers are generally paid from "overwrite commission" based on their agents' sales, they "have no control over the business."[3] SAC ¶ 13.

---

[2] The Court is unclear what the SAC means by this.
[3] Insphere, on the other hand, transfers, promotes, and terminates sales agents, sales leaders, and division managers; determines all sales territories; prohibits employees from business associations with other insurance companies without a pre-existing contractual relationship; restricts employees from selling unauthorized products; requires its employees to attend certain events, meet certain performance goals, and file regular reports; "has a practice of not mailing commission checks to Sales Agents and Sales Leaders in order to force them to come into the division office regularly"; controls all advertising and the types of products offered; strongly expects employees not to own

2

When a sales agent sells a policy, the application is sent to selected carriers for approval. Insphere then requires the sales agent to take a cash advance on the prospective commission, which Insphere treats as a loan subject to interest that the sales agent must repay even if the policy is later rejected by the consumer or carrier. SAC ¶ 14. Until November 2009, sales leaders and division managers were responsible for a variable percentage of their sales agents' outstanding debt. "Productive" sales agents may be promoted as sales leaders, but their loans are paid off through deductions from their overwrite commission. SAC ¶ 14.

Hennighan "began his employment with Defendant INSPHERE in May 2010 as a Sales Agent."[4] SAC ¶ 10. During his approximately two years in that position, he became one of the top sales agents at Insphere, earning many awards and accolades. SAC ¶ 12. Although Insphere paid Hennighan an 8.5 percent commission rate on sold policies when he began working, the rate was lowered to six percent in November 2010, and Hennighan was "required [] to reimburse" Insphere for the rate difference on past sales, plus interest. SAC ¶ 15. Also, Insphere would sometimes demand return of his commission checks. SAC ¶ 15. As part of his work, Hennighan would have to spend his own money on travel, the cost of acquiring new leads, computer equipment, phone costs, licenses, insurance, and business attire, costing "as much as tens of thousands of dollars." SAC ¶ 16.

"During most of his employment" at Insphere, Hennighan did not believe Insphere was paying its sales agents and leaders properly. SAC ¶ 17. On November 18, 2011, Hennighan filed a complaint with the Labor Commissioner alleging violations of the Labor Code because Insphere misclassified its employees as independent contractors and was not paying them or providing proper itemized statements. SAC ¶¶ 17 & 22. Hennighan's direct supervisor told him that he was

---

or operate another business; determines all commissions; "owns and controls all sales prospects and clients, and requires Sales Agents and Sales Leaders to purchase sales leads" from Insphere; determines whether to accept insurance applications; calculates compensation based on anticipated profits from accepted applications; provides stock options and 401(k), which employees may lose if they "associate" with other insurance companies; provides company rules; performs and mandates performance reviews; and requires employees to sign agreements not to compete with Insphere during or after their employment and to indemnify Insphere for all torts. SAC ¶ 13.
[4] This conflicts with the FAC's allegation that "Plaintiff HENNIGHAN began his employment with Defendant INSPHERE in May 2005 as a Sales Agent." FAC ¶ 10.

causing problems through his complaint and said that it was "not a smart move," that "he would have no friends," and not to "throw this job away." SAC ¶ 18. The "hostile work environment" created by his supervisor and the fear of similar retaliation from seeing how Insphere treated other sales leaders and agency managers who filed complaints with the Labor Commissioner caused Hennighan "extreme anxiety and stress," affecting his work performance and home life, and resulting in lower sales and income. SAC ¶ 19. Around April 27, 2012, Hennighan was notified that his "Independent Contractor Agreement" was being cancelled, thus ending his employment with Insphere. SAC ¶ 20.

**PROCEDURAL BACKGROUND**

The Court incorporates by reference its earlier discussion of this case's procedural history in the Order Granting Motion to Dismiss First Amended Complaint with Leave to Amend. Dkt. No. 41 ("Order"). HealthMarkets filed a motion to dismiss the First Amended Complaint ("FAC") on July 17, 2013. Dkt. No. 37. On August 29, 2013, the Court granted HealthMarkets's motion to dismiss the FAC with leave to amend, finding that Hennighan did not adequately plead that HealthMarkets was Hennighan's employer or was Insphere's alter ego. Hennighan filed his SAC on September 18, 2013. Dkt. No. 44. HealthMarkets now moves to dismiss the SAC. Dkt. No. 46.

The SAC asserts the same causes of action as the FAC: (1) unlawful discharge, discrimination, and retaliation under California Labor Code Sections 98.6 and 1102.5; (2) wrongful termination in violation of public policy codified in California Labor Code Sections 98.6, 1102.5, 204, 226, 226.7, 227, 510, 512, 1194, and 2802 and Business and Professions Code Section 17200; (3) failure to immediately pay wages upon discharge under California Labor Code Section 201; (4) failure to make agreed upon vacation payments under California Labor Code Sections 227 and 227.3; (5) failure to provide itemized wage statements under California Labor Code Section 226; (6) failure to provide meal and break periods under California Labor Code Sections 226.7 and 512; (7) failure to pay overtime wages under California Labor Code Sections 510 and 1194; (8) failure to indemnify work-related expenditures under California Labor Code Section 2802; (9) unlawful, unfair, and fraudulent business practices under Business and

1 Professions Code Section 17200 as evidenced by violation of public policy and California Labor
2 Code Sections 98.6, 1102.5, 204, 226, 226.7, 227, 510, 512, 1194, and 2802; and (10) violations
3 warranting penalties under the Private Attorneys General Act of 2004, California Labor Code
4 Sections 2698 and 2699.

**LEGAL STANDARD**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party," *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008), drawing all "reasonable inferences" from those facts in the nonmoving party's favor, *Knievel v. ESPN*, 393 F.3d 1068, 1080 (9th Cir. 2005). A complaint may be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "a complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and brackets omitted). The court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

**DISCUSSION**

**I. HENNIGHAN FAILS TO ADEQUATELY PLEAD THAT HEALTHMARKETS IS LIABLE UNDER THE CALIFORNIA LABOR CODE.**

Hennighan fails to adequately plead that HealthMarkets is his employer and that he may bring claims against it under the California Labor Code. As the Court noted in its previous Order, "[t]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." *S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 350 (1989). "California courts consider a number of additional factors, including: the right of the principal to discharge at will,

without cause . . . whether the work is usually done under the direction of the principal . . . and whether the parties believe they are creating an employer-employee relationship." *Juarez v. Jani-King of Cal., Inc.*, 273 F.R.D. 571, 581 (N.D. Cal. 2011). While courts may consider whether an alleged employer "engaged" the employee or "suffered" or "permitted" him to work, "[c]ontrol over how services are performed is an important, perhaps even the principal, test for the existence of an employment relationship." *Martinez v. Combs*, 49 Cal. 4th 35, 64, 76 (2010).

As with the FAC, Hennighan pleads no facts showing that he has an employment relationship with HealthMarkets. The SAC adds little to what was pleaded in the FAC. The only additions are (1) that HealthMarkets "conducts its insurance distribution business through its indirect insurance agency subsidiary," Insphere; (2) that Insphere "has conducted business under several different names throughout the years"; and (3) a formulaic recitation of factors that may show an alter-ego relationship, but completely devoid of any factual claims to support them. SAC ¶¶ 8-9. Again, there is no allegation that HealthMarkets was Hennighan's employer or that he was its employee, nor is there any allegation of any fact to even suggest that HealthMarkets exercised any control over him. Similarly, there are also no facts pleaded showing that he was engaged by or allowed to work for HealthMarkets.

The Supreme Court has made clear that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal punctuation omitted). Despite the Court's admonition in its previous Order that Hennighan needed to plead more facts showing an employment relationship with HealthMarkets to survive a motion to dismiss, he has not done so. For that reason, he fails to adequately state any claim against HealthMarkets under the California Labor Code.

## II. HENNIGHAN FAILS TO ADEQUATELY PLEAD THAT HEALTHMARKETS IS INSPHERE'S ALTER EGO.

Hennighan fails to adequately plead that HealthMarkets is liable to him for Insphere's actions under the alter ego doctrine. As explained in the previous Order, "The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate

6

form unjustly and in derogation of the plaintiff's interests." *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (1985). The doctrine allows "the court [to] disregard the corporate entity and [to] hold the individual shareholders liable for the actions of the corporation" when it would be just to do so. *Id.* The doctrine has two elements: "First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone." *Sonora Diamond Corp. v. Super. Ct. of Tuolumne Cnty.*, 83 Cal. App. 4th 523, 538 (2000).

With regard to the first element, "The factors which may show the 'unity of interest' issue vary according to each case and are fact specific. Among the facts which can be considered are financial issues (e.g., was the corporation adequately capitalized?); corporate formality questions (e.g., was stock issued, are minutes kept and officers and directors elected, are corporate records segregated?); ownership issues (e.g., what is the stock ownership picture?); commingling issues (e.g., are corporate assets commingled, does the parent company merely use the corporate shell of the subsidiary to obtain goods and services for the parent company?); etc." *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1285 n.13 (Ct. App. 1994). Despite the many ways available to show unity of interest, Hennighan provides nothing more than naked assertions, such as "there has been a failure to maintain an arms-length relationship amongst these equities" and "both entities have failed to follow required corporate formalities," bereft of any factual support. SAC ¶ 9. Such conclusory legal assertions presented in the guise of factual allegations are insufficient to meet the test of plausibility set out in *Twombly* and *Iqbal*.

With regard to the second element, the plaintiff must show an inequitable result will occur if the two entities are not treated as one, as well as "some conduct amounting to bad faith." *Leek v. Cooper*, 125 Cal. Rptr. 3d 56, 70 (2011). Here, Hennighan shows neither. He says that "an unjust result may occur." SAC ¶ 9. But Insphere remains a defendant in the case, and Hennighan does not articulate any inequity that would result by refusing to pierce the corporate veil. As the California Court of Appeal held in *Leek v. Cooper*, "there is nothing to indicate that [the plaintiff], if successful against the corporation, will not be able to collect on any judgment against the

1 corporation. Absent such evidence, plaintiffs cannot show that the result will be inequitable, and have not stated the second element of an alter ego claim." 125 Cal. Rptr. 3d at 70. That finding is also true here.

Hennighan argues that "factual support is not the standard to survive a motion to dismiss" and quotes *Iqbal* for the proposition that Federal Rule of Civil Procedure 8 does not require "detailed factual allegations." Opp'n 4 (quoting *Iqbal*, 556 U.S. at 678). While the latter statement is true, Hennighan's overall argument displays a serious misunderstanding of the law. The Supreme Court unambiguously held, "A claim has facial plausibility when the plaintiff *pleads factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added). As the court continues in *Iqbal*, proper pleading "demands more than an unadorned . . . accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (citations, brackets, and quotation marks omitted). Paragraph 9 of the SAC, upon which Hennighan primarily relies, contains *no* "factual enhancements" whatsoever and appears to be nothing more than a conglomeration of various factors that courts have used in applying the alter ego doctrine. Yet Hennighan persists in arguing that his conclusory assertions are proper factual allegations.

*Iqbal* holds, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Nothing Hennighan proffers to show that HealthMarkets is Insphere's alter ego is entitled to the assumption of truth because he has provided nothing more than conclusions.

## CONCLUSION

Hennighan has had three opportunities to show that HealthMarkets may be liable to him. In its previous Order, the Court explained what Hennighan needed to do to survive a motion to dismiss. He was not able to follow that advice. The Court finds that additional pleading would be

United States District Court
Northern District of California

futile.  Accordingly, HealthMarkets's Motion to Dismiss the SAC as to HealthMarkets is GRANTED WITH PREJUDICE.

**IT IS SO ORDERED.**

Dated: November 13, 2013

WILLIAM H. ORRICK
United States District Judge